We'll go to this matter submitted. We'll move on to the next matter for argument. Canzoneri versus Prescott Unified School District. May it please the Court, I'm Sherry McCracken and I represent Denise Canzoneri. My client and her husband are with us in the audience. I must start with it is a pleasure to be appearing before you today. In this particular matter, Denise Canzoneri, a 22-year librarian at the Prescott Unified School District, spoke to the school board on a matter of public concern as a private citizen, which was the last protected speech activity she took on April 2nd before she was terminated on April 3rd. It's correct, is it not, that prior to that school board meeting, she was being, she was told that her position, I guess for budgetary reasons, was being eliminated. Is that correct? Yes. She was told that on March 22nd, excuse me, on March 20th. On March 22nd, she talked to the school board member about matters of fiscal concern, but it's clear on the record, if you look at ER 64 and ER 90 particularly, where ER 64 on April 3rd, she has sent a letter from the superintendent, Howard, and told that she is terminated on behalf of the school board. Then, as you go forward, on documents dated April 11th, the HR people tell her that she's going to be insubordinate and that she can be terminated as part of the discipline. It's pretty clear that Prescott Unified School District did not consider its notification to her that there might be a reduction in force, that she would be placed in a different position, and that the school board had to make that decision, and they wouldn't be making that decision until July. So we think that it's very clear that she was terminated in the spring. So we have the initial point that the school district, someone from the administration tells her that her position is being eliminated for budgetary reasons. Yes, and that there will be a reduction. After that, she appears in a public setting as a private citizen and raises concerns about the library and the way it's being operated, I guess. Correct? Right. After that, she goes back to work and assembles some fellow employees and talks to them.  What's that all about? She never goes back to work. On April 3rd, in retaliation for her speech, they put her on administrative leave. They tell her that she cannot speak to basically anyone who is related to the Prescott Unified School District, any student, any peer, any parent, and she never returns to duty as a librarian after that. She never goes to the workplace and attempts to organize employees to help in her cause?  That the library is not being operated properly? No, because she is not ever back at the school district. The April 3rd letter bans her from all premises of Prescott Unified School District. Whether she was banned and whether she ever assembled these co-workers are two different questions. Okay, she Are you saying that the meeting with co-workers never happened? I think she talked to co-workers prior to her speech to the school board. I'm talking about after. She did, she did, she obeyed the Draconian I'm still not answering the question. There's a difference between never going back to work and getting together with fellow employees. She obeyed the school district's order and never got together with fellow employees nor talked to anybody about the matter except in the presentation to the school board and letters to the superintendent and to HR. Okay, I got you. Okay, there are two well-established First Amendment rights that the Prescott Unified School District violated. The first was retaliation for protected speech on a matter of public concern, which included the April 2nd presentation to the school board where she signed in as a private citizen and she was allowed to speak as a private citizen. Previous speech had been speech to a member of the school district on March 22nd saying I'm worried about donations under the Arizona law for schools. I'm also worried about a third-party vendor and if there should be an audit. She, thus, the retaliation is clear simply by the letter of April 3rd and followed up by other letters. The other well-established matter is prior restraint. We submit that Prescott Unified School District's policy, GBEA, is prior restraint. It basically says it's the employee's code of ethics, which the district says that she is bound to by her contract to follow. It says that she will not take any criticism of the school district or discuss it with anyone but the management official who is in charge of making it better. Then, the other prior restraint is the letter itself on April 3rd that directs her to not have any communication contact by telephone, in writing, or other communication with anyone who is related to the Prescott Unified School District. Who is that letter from? That letter is from the assistant superintendent, Defendant Marty Reed. Is the assistant superintendent a policymaker? I believe so. What we think the policymaking is in this situation is the board delegated it to the principal. That's either in the record or, I mean, it's a fairly drawn inference that he was acting as the direct subordinate of the board? Yes. And, in fact, we have a letter that comes in response to Mrs. Canzanieri saying, look, I've worked for you for 22 years. You have given me this gag order. I want to talk to people. I want to talk to my peers. Please lift the gag order. And the superintendent, Howard, a defendant, writes back and says, I have delegated this to the principal and I stand behind him, basically. Well established is kind of fun. Prior restraint was well established with U.S. versus New York Times. We probably remember those as the Pentagon Papers. It shows a presumption at the Supreme Court level that prior restraint of almost any kind is not available to a government entity. You will recall that the government in that particular case brought a case to enjoin the publication of what it considered highly secret documents by the New York Times and the Washington Post. What was found is that prior restraint was not something that could be used by the government or the courts in this situation. The other thing we want to point out in this case is Pickering. Pickering is 52 years old, a Marshall decision. It may be older than that. But it has almost the same factual pattern as the pattern of Ms. Cancenari. It says that not only are teachers entitled to free speech as citizens, but that we have a tremendous important role to guard teachers who are the people who may know the most about school districts, fiscal, and other problems that need to be addressed as a matter of public concern. Let me ask you this real quick because I'm anticipating what the other side is going to argue. They're going to say, even if everything she says is true, this is a very tricky area of law under Pickering. You've got to weigh these five government interests and qualified immunity. So for qualified immunity, the way the Supreme Court has set up the test, you've got to give us something specific. So what is your best case that put the district on notice that if they went down this path, there would be a problem? I think I like Geeson, which is the one with the chief of police, where the chief of police decided that the accounting manager was suspect about paying invoices, not paying invoices, etc., and he went into the financial and talked with the comptroller, and the court, the Ninth Circuit, found that those were not within his job duties and that he was speaking as a private citizen, and actually he was reinstated. And that's Greeson you said? Yeah. Okay. Thank you. It's in my list. I see it. Qualified immunity, I might as well say, is a controversial topic. That's fair. Then you probably don't want me to go further with that. Do you want to reserve your time? Yes, please. You got it. Good day, Your Honors. May it please the Court. My name is Don Johnson, and I represent the appellees in this case. I think it's important to make the point right off the bat that we are talking about two different types of defendants in the case. The first defendant, of course, is the school district, the juror entity that was sued, and very different considerations apply to the statement of a claim against the district. We'll talk about the individual defendants shortly, but again, with respect to the district, the case law is very clear that Ms. Canzanaria only states a claim against the district if she can show the existence of an unconstitutional policy from the inception, or that the action of which she complains was taken by an official policymaker or official decision maker. Neither of those are present in this case, as Judge Brnovich recognized. First of all, policy GBEA, the staff ethics policy, speaks to what the school district expects of its employees in their school relationships. That's in the very first portion of policy GBEA. The district is explaining what school employees, how they're expected to interact with each other. There's nothing unconstitutional in the face of that, and so GBEA is not an unconstitutional policy and can't be used as the basis for an assertion of liability against the district. With respect to- Just a minute. Yes, sir. Let me stop you right there. Are you saying that it's pretty clear that that policy doesn't purport to affect relations, an employee of the district, officer of the district's relation with any outside person or entity? Doesn't put any kind of impingement upon it? Is that what you're saying? Is that the way the board has read it? Is it in the record that way? There's nothing in the record to say that that's how the board interprets it, your honor. We're saying that from the face of the policy, it starts out talking about how employees are expected to manage their school relationships, and then there's a laundry list of expectations about how to get along with each other. So when an employer is giving its employees direction about how to interact with each other, we suggest that you can't say that that's unconstitutional on its face, especially when one juxtaposes that with the case that we're going to talk about shortly, the Garcetti case, recognizing that employers do have the right to manage employees' First Amendment expectations in the employment context. But as I was saying on the official policymaker question, as your honor touched on this, Ms. Reed is not an official policymaker, nor was Superintendent Howard, nor was Principal Goligoski. And the reason we know that is because the case law instructs that the identity of an official policymaker is governed by state law, and Arizona law is very clear that the governing board has the authority to make policy. The cases in Arizona interpreting those statutes are to that same effect. They recognize that in a Section 1983 claim against the school district, well, there's, it doesn't exist because the school, that is, unless the school board itself took the action, because the case is recognized that the school board is the policymaker under Arizona law. So because there's no facially unconstitutional written policy, and because the individuals who took the actions of which Ms. Canzanieri complains are not official policymakers as a matter of law, there's no Section 1983 claim against the district, period. So let's turn then to the- One quick question on that, because this is the part of the case that I think troubles me the most. I don't mean to either side, just me understanding it. So the complaint here alleges that the school district had a policy to deprive the plaintiff explicitly of free speech. So she alleges that. At this stage, this is 12B6, why isn't that good enough to get to summary judgment? Here's why, Your Honor, because as we know, in assessing a motion, a 12B6 motion, the court looks not at just the black and white allegations in the complaint. The court also considers the attachments, the exhibits, the documentation that the plaintiff might include with her pleadings, and upon which her asserted claim rests. And so in this case, she referenced and attached a copy of policy GBEA, the staff ethics policy. So in assessing our motion to dismiss, Judge Brnovich quite properly looked not at just the conclusory allegation that they're using an unconstitutional policy. She looked at the policy. She read it, and she recognizes, as I think anyone really looking at it seriously must, that policy on its face, which pretty much every district in Arizona uses, does not, is not an unconstitutional policy on its face. So even though, yes, she alleges there was an unconstitutional policy, the policy she attached and upon which she relies is fair game. And Judge Brnovich recognized it's not unconstitutional on its face. So in effect, with the old expression, she pled herself out of court on that claim by referencing that specific policy. And the content of that policy is known to us. Can we go back to a question I asked your friend on the other side? At some point, Ms. Canzanieri was told to attend a mandatory HR meeting of some kind with Krista Simmons in the HR office. Yes, sir. Is that correct? Yes, sir. And she didn't show up for the meeting. And then Simmons followed that with an email, am I correct? I think that's right, Your Honor. After that, asking her to come back or whatever. But the letter at the, she then sends Canzanieri an actual letter detailing the results of the formal investigation, am I still correct? Yes, sir. Okay. In the letter, it says that she's violated sections E, I, and K of the GBEA policy by speaking with coworkers about forming a committee to address the library's future while at work. Yes, sir. Am I correct in that regard? That's what Ms. Simmons recited, yes, sir. The allegation about the meeting with coworkers, did that occur before or after the appearance at the school board? My understanding, Your Honor, it was before. It was during the 10 days or so between the time she was told that her position was being eliminated and the time she made her presentation to the board. Okay. That brings this question to mind. This is, as my colleague pointed out, Rule 12 dismissal. Why not let a jury determine whether the school district was terminating Ms. Canzanieri for what she did at the school board meeting as opposed to forming this committee of coworkers to address library concerns? Something that on its face, if that standing alone could have been reasons for adhering to their position, that her position had been terminated. The answer to the question, Your Honor, requires that we go back and remember, again, we're talking about claims against two distinct types of defendants. I understand. The claim against the school district fails because it just wasn't correctly pled, no unconstitutional policy, and the individuals such as Ms. Simmons, Ms. Reed, etc., they're not official policy makers. Suppose we were to conclude that the complaint states a Monell claim. States a claim against the school district? Yeah. Under Monell. I'm sorry, Your Honor? Under Monell. Yes, sir. In that case, if it does state a valid claim against the school district on either of those two bases, then we look at the Garcetti case, which demonstrates that even if she states a valid claim against the district, her speech to the school board, her conduct in basically going to her boss and saying, I think you ought to run my department a different way. She's not speaking, that's not a speech that's subject to First Amendment protection under the Garcetti case, Your Honor. And, in fact, the work that she did in preparation to the speech, as we've pointed out in our brief, really demonstrates that. When she was told that her position was going to be eliminated because there's no dollars left for libraries, or at least not enough, she took that 10 days to meet with people, meet with a member of the school board, meet with administration, gather evidence, to try to basically change the school board's mind about how they wanted to manage her department. She, I think in one of her papers that's attached to the complaint, she says she was trying to head off that vote. Now, as Judge Brnovich noted in dismissing the first complaint, all of that work really is a public employee talking about her job, talking about how her job ought to operate, telling her boss, you're making a wrong decision about my job, about my department, you really ought to run it this way. And that's a fair discussion for any employee to have, I respect that. But that's not subject to First Amendment protection. When the boss responds negatively to that kind of critique or discussion, that's not a First Amendment issue. That's a public employer exercising its prerogative as such and taking employment action that it feels is justified. So even if one concludes that, well, there is, we do get over Monell as a threshold matter, a fortiori, Your Honor, there's no claim because of Garcetti against either the school district. And then if we could segue, Your Honor, to the individual defendants, there's certainly no claim against the individual defendants. They are immune. They are immune under, given the Garcetti case law. I knew we were going to hear about Pickering from my colleague. I won a small bet with myself that we weren't going to hear about Garcetti from my colleague because that case, obviously the more recent case, and has been the subject of much more discourse, is controlling in this circumstance. When the individual, when the plaintiff's speech arises from and finds its origin in his or her job duties, that kind of speech is simply not protected under Garcetti and under this court's precedence interpreting Garcetti in the 12 or 14 years since. Do you agree that if the only stated reason on behalf of the school board for either A, sticking to their prior position that her position had been terminated for budgetary reasons, and if they had simply said, your meeting with organizing co-workers violates the policy, if that was the only thing before the court, that that's summary judgment stuff? If the plaintiff's deposition testimony were to that effect, or if the plaintiff made some other admissions to that effect, then I think that would be summary judgment material. Yes. Yes, Your Honor. But again, getting back to the qualified immunity issue for the individuals, as Your Honor pointed out, the plaintiff in this case really has a burden to show the court, either to show the district court, which she couldn't do, or Your Honors, which she can. We could conclude that the district court was correct on qualified immunity. Yes, sir. But say that, determine that her complaint states someone else's claim and send it back. And then the district court could resolve through discovery or otherwise, summary judgment or not, or jury trial or not, correct? If Your Honor reaches those conclusions, certainly, yes. We're here in a little different posture, 12b-6. But as we're all aware, of course, even a Section 1983 claim is susceptible to dismissal under 12b-6. The Sabra case, which we've cited to great length in our briefing, is exactly such a case. It's the province, it's the obligation of the trial court to assess the pleadings and to gauge whether, based upon the allegations and the complaint and its attachments, and based upon the governing case law, does it state a viable claim. And obviously, we think Judge Brnovich got it right in concluding there's no claim against the district because, as an entity, and the individuals are immune because it's not clearly established that the employer does not have the right to manage its employees' internal discussion. Basically, as we've summarized in our brief, when an employee takes the time to research and then a presentation to her boss about how her department ought to work, no one can say that it's clearly established that the employer doesn't have the right to respond to that. Thank you, Your Honors. Thank you, Counsel. Thank you. Obviously, I disagree. We think Garcetti supports our case. Ms. Cancenari was not speaking as part of her job. It's very clear that it wasn't part of her job. All of the correspondents from the school district told her not only that it was not part of her job, but that she was not allowed to do any of these things. Also, I refer you to Lindy, which is a Supreme Court case that basically talked about when something was speech authorized by the employer. The Supreme Court said in that case, which was the opposite of this case, that when a public official was accused of speaking in his public position, that there had to be proof that there was authorization for the public official to not only speak on that subject with authorization, but to speak in that arena or that manner. That particular case involved a city manager who had some kind of social media site where he blocked someone from. Also, one of the questions is there is no obligation for the plaintiff to plead the lack of an affirmative defense. And under 12b-6, this is supposed to be on the basis of the complaint and all of the things that were in the complaint. To find that there's qualified immunity on the face of the complaint, it's not there. It wasn't pled. Also, we disagree about the well-established. The well-established really does go to prior restraints and prior restraints. Also, I would refer you to ER-064 that talks about these things. And I would refer you to ER-077. This was connected to my client because they said she'd violated it and she, by her contract, was obligated to it. It says, directs any criticism of other staff members or any department of the school system toward improving the district. Such constructive criticism is to made directly to the school administrator. That is prior restraint. Then it says, at the very bottom, without a number, in the performance of duties, employees shall keep in confidence such information as they may secure unless disclosure serves the district purpose or required by law. It is plausible under Twombly and Iqbal that the Prescott Unified School District did everything in its power to keep Ms. Canzanieri and any other employee from actively criticizing it in the public forum. Thank you, counsel. Appreciate it. I have a quick question, counsel. Apologize. Misinterpreted the sign. I practiced law in this community for a long time. I know that. There's a lawyer in this community named Robert McCracken. Any relation? If I can take time, Your Honor.  It truly is very funny because McCracken is not a common name. Robert McCracken was married to a judge here. And when I was young, I had a opposing counsel, Rich Goldsmith, who could not get through his mind that I was not married to Robert. And Jose Rivera, who you know, walked into the Superior Court judge and said, I have been dying to talk to you. Goldsmith can't get through his mind that you are not married to Robert, that Sherry is not married to Robert McCracken. So there's no family relationship? No, no. But I suddenly get his malpractice insurance. Thank you, Your Honor. Thank you. Sorry for the diversion. Thank you both for your briefing and argument. He was a lovely man.
judges: HAWKINS, TASHIMA, OWENS